UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL CLARK,

    Plaintiff,

    v.                                CASE NO. 8:05-CV-67-T-23MAP

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a former Publix store manager who suffers from Reflex Sympathetic Dystrophy (RSD), seeks to recover long-term disability benefits under Publix's employee plan issued through Hartford and governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* Both Plaintiff and Hartford have moved for summary judgment (docs. 28, 38). And, having distilled their arguments to their core, the dispute centers on the meaning of the phrase, "own occupation," as used in the plan. Plaintiff contends it means his job as a Publix store manager; the Defendant argues it means his general occupation, namely, a retail store manager as performed in the market. After examining the administrative record *de novo*, I find Hartford's decision that Plaintiff could return to his occupation was not "wrong." Accordingly, I recommend the district judge grant Hartford's motion for summary judgment.[1]

    *A. Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions,

---

[1] The district judge referred the summary judgment motions to me for a report and recommendation (doc. 29). *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  *Anderson,* at 255.

Furthermore, "in an ERISA benefit denial case ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  *Curran v. Kemper National Services, Inc.,* No. 04-14097, 2005 WL 894840, at *7 (11th Cir. March 16, 2005) quoting *Leahy v. Raytheon Co.,* 315 F.3d 11, 17-18 (1st Cir. 2002).

    B.  Facts

        *1. RSD and events leading up to the administrative decision*

RSD is a chronic pain state induced by an injury to a nerve or soft tissue.  For reasons not yet understood, the sympathetic nervous system apparently assumes an abnormal function after the injury.  The pain usually is associated with autonomic changes (e.g., vasomotor abnormalities) and/or trophic changes (e.g., joint contractures).  The typical complaint is severe,

constant burning and/or deep aching pain in one or more of the extremities. The patient may also suffer diffuse tenderness or point-tender spots in the muscles of the affected region. Vasomotor changes result in skin that is warm or cool to the touch and blueish or reddish in appearance. Mobility can be affected by joint stiffness or muscle contractions. Symptoms initially are generally localized to the site of the injury but over time can spread to other extremities or regions of the body. The duration and intensity of the syndrome varies. For some patients, it can extend for years or indefinitely with periods of remission and exacerbation. *See* H796-843[2] ; THE MERCK MANUAL at § 14, Ch. 167.

In April 2001, after working as a Publix store manager for fourteen years, Plaintiff claimed he could no longer meet the physical demands of his job.[3] Diagnosed with RSD, Plaintiff complained he suffered constant pain in his right lower leg that at times could be severe. Vascular surgery had not corrected the problem, and the grinding requirements of his position exacerbated his condition (H735, 740, 741). Consequently, he filed for disability under Publix's long-term disability plan issued through Hartford and began collecting benefits in July 2001.

In December 2003 Hartford retained a non-examining medical consultant, Dr. Lyon, to reevaluate Plaintiff's functional capacity for work. Lyon, a board certified family practitioner, reviewed over four years of medical records from seven physicians. These items, spanning from June 1999 to September 2003, included progress and physician notes, operative reports, duplex studies, blood work, and x-ray reports. Lyon also looked at surveillance video of the Plaintiff

---

[2] The letter "H" followed by the pagination number refers to Hartford's administrative record. That record has been filed in paper format. *See* doc. 29.

[3] Plaintiff reported to Hartford he normally worked 55 hours a week but eventually cut this down to 40 hours for medical reasons (doc 28 at ¶ 2).

taken periodically by a Hartford investigator.[4] And, significantly, Lyon spoke with Plaintiff's treating family physician, Dr. Urich, and one of his treating vascular surgeons, Dr. Bandyk, about the Plaintiff's condition. In advance of these conversations, Hartford forwarded to each physician the Plaintiff's surveillance video (H231-232). Both treating doctors opined Plaintiff possessed the functional capacity for full-time light work.[5] Based on his investigation, Lyon concluded Plaintiff was "capable of full-time light demand work" with "no specific restrictions or limitations." *See* H218.[6]

---

[4] The surveillance took place on six separate occasions: July 19, 20, August 25, 26, and October 3, 4, 2003.

[5] Adhering to Rule 56's perspective, I note Dr. Urich couched his opinion because he was uncertain if Plaintiff could tolerate full-time working given Plaintiff's "subjective complaints" about pain. *See* H222. Dr. Bandyk, who last examined Plaintiff in November 2001, however, expressed no such reservations. Moreover, Bandyk told Lyon that Dr. Back, Bandyk's vascular partner, agreed with Bandyk's assessment. Yet, in early June 2003, Back had expressed some caution. In response to Hartford's disability inquiry and after examining the Plaintiff, Back stated in a letter to Hartford: "The patient has been somewhat reluctant to proceed with any more invasive procedures [i.e., a recommended sympathetic nerve block] after his prior outcome from varicose vein surgery and failure to make definitive diagnoses [of RSD] precludes my final opinion regarding his ability to return to work based on his known vascular problems which include mild venous insufficiency in the left leg currently and no recurrence of the venous symptoms in the right leg. The patient would be expected to return to work in at least a light occupation capacity. However, the development of reflex sympathetic dystrophy can be greatly disabling but requires further attention." *See* H270.

[6] The Dictionary of Occupational Titles (DOT) published by the Department of Labor describes the strength demands of "light work" to include: "Exerting up to 20 pounds of force occasionally, and/or a negligible amount of force constantly … to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated light work (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. DOT at Appendix C, Part IV(c).

*2. the administrative decision and the parties' current claims*

Publix's disability plan defines "total disability" in two different temporal contexts: (1) during the elimination period (the first 90 days of total disability) and for the next 24 months, the claimant is prevented by his disability from doing all the material and substantial duties of his own occupation on a full-time basis; and (2) after that, and for as long as the claimant remains totally disabled, the claimant is prevented by his disability from doing any occupation or work for which he is or could become qualified by training, education, or experience (H35). Notably, the plan does not further define the term, "own occupation." Nonetheless, armed with Lyon's analysis, and applying the terms of the policy, Hartford ruled Plaintiff could return to his occupation of retail store manager and terminated his benefits (H49-52). Plaintiff administratively appealed and specifically complained that his videotaped activity (driving, running multiple errands, walking with a normal gait, bending and picking up yard debris, mowing the yard) did not equate with the duties demanded by his full-time job. Hartford conducted additional review but reaffirmed its denial (H42-43).

Plaintiff argues Hartford acted arbitrarily and capriciously by relying "entirely" on a medical consultant with "unknown qualifications and experience," ignoring Plaintiff's complaints of pain, and failing to appreciate the sustained activity demanded by his occupation as a supermarket store manager (doc. 28 at p. 15). Hartford gives the flip side – Lyon presented a thorough analysis justifying the decision to terminate Plaintiff's benefits. Hence, Hartford was "not wrong."

C. Discussion

*1. the Eleventh Circuit's ERISA checklist*

The Eleventh Circuit, guided by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (11th Cir. 1989), applies three different standards for reviewing ERISA benefits determinations: (1) *de novo* if the plan does not grant any discretion to the administrator in making the benefits determination; (2) arbitrary and capricious if the plan grants the administrator discretionary authority; and (3) heightened arbitrary and capricious if the administrator has a conflict of interest. *Williams v. BellSouth Telecommunications, Inc.,* 373 F.3d 1132, 1134-35 (11th Cir. 2004). *Williams* incorporates these standards into a multi-step checklist designed to simplify the analysis for "virtually all ERISA-plan benefit denials." *Id.* Hence, a reviewing court must:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (namely, the court disagrees with the decision); if the court agrees with the administrative decision, the inquiry ends and the administrative decision should be affirmed.

(2) If the administrator's decision is "*de novo* wrong," the court next determines if the administrator was vested with discretion in reviewing the claims and if not, the inquiry ends and the decision should be reversed.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion, the court must determine if reasonable grounds support it (this review under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, the decision should be reversed; however, if reasonable grounds do exist, the court must next determine if the administrator operated under a conflict of interest.

(5)     If no conflict, the inquiry ends and the decision is affirmed.

(6)     If a conflict is present, the court applies the heightened arbitrary and capricious review to decide if the decision should be affirmed or reversed.[7] *Id* at 1137-1138.

### 2. *the central issue – defining own occupation*

The crux of the debate centers on the meaning of "own occupation," a term the plan fails to define. The Plaintiff, by arguing he is physically incapable of returning to *his* job at Publix, necessarily defines "own occupation" as *his specific job* – a Publix store manager working fifty-five hours or more a week with total supervisory responsibility. Hartford takes a broader view. Armed with the functional assessments of treating and consulting physicians and guided by the *Dictionary of Occupational Titles* (DOT), it concludes Plaintiff has the functional capacity to work as a retail store manager, a job the DOT classifies as light work. Hence, the initial question, applying the Eleventh Circuit's checklist, is whether Hartford's interpretation is *de novo* wrong.

Although the Eleventh Circuit has not decided this particular issue, the meaning of "own occupation" in the absence of a plan definition, other courts have. And these courts have concluded "own occupation" means one's occupation as it is generally performed in the labor market. *See Panther v. Synthes,* 371 F.Supp 2d 1267, 1276-1279 (D. Kan. 2005); *Richards v. Hartford Life & Accident Ins. Co.,* 356 F.Supp. 2d 1278, 1287 (S.D. Fla. 2004) (using DOT when "occupation" not defined in plan was not error); *Ehrensaft v. Dimension Works, Inc.,* 120 F.Supp. 2d 1253, 1258-59 (D. Nev. 2000); *Ceasar v. Hartford Life & Accident Ins. Co.,* 947

---

[7] The Court in *Williams* described the heightened arbitrary and capricious standard as "somewhere between the *de novo* and 'mere' arbitrary and capricious standard." *Williams v. BellSouth Telecommunications, Inc.,* 373 F.3d 1132, 1138 (11th Cir. 2004)

F.Supp. 204, 207-08 (D. S.C. 1996). Applying the ordinary meaning of the term, "own occupation," Hartford was not wrong by defining the Plaintiff's usual occupation as a retail store manager and assessing the functional demands of that job as "light work." [8]

### 2. *the corollary – Plaintiff's ability to do light work*

Plaintiff argues Hartford acted arbitrarily and capriciously in deciding he could work as a retail manager. However, applying *Williams's* first step, I cannot say Hartford's decision is *de novo* wrong, particularly since three of Plaintiff's treating physicians, Drs. Urich, Bandyk, and Back, opined he could do light-duty work. Urich and Back admittedly qualified their opinions with concerns about the Plaintiff's subjective pain complaints and the potential progress of the disease; yet, neither one unequivocally stated Plaintiff could not work. Besides, the administrative record supports the administrator's decision Plaintiff could return to his work. For example, in June 2002, Dr. Kirkpatrick, one of Plaintiff's physicians who also serves as a scientific advisor to the Reflex Sympathetic Dystrophy Syndrome Association of America (H794), described Plaintiff as suffering from a "mild physical impairment." In February 2003, Dr. Urich noted Plaintiff suffered from RSD, chronic pain, anxiety, and stress, yet found Plaintiff capable of standing for 10 minutes at a time, walking for 2 hours at a time, sitting for 30 minutes at a time, and lifting up to 30 pounds at a time. Plaintiff could reach, use a keyboard, and drive

---

[8] Plaintiff, seizing on an analysis performed by Hartford's rehabilitation clinical case manager (H154-156), argues any "alternative job must pay at least 60% of the disabled employee's pre-disability earnings." *See* doc. 28 at ¶ 4. In other words, any retail manager's position the Plaintiff could perform must meet this pay grade. But as Hartford points out, the plan does not require this (doc. 34 at p. 17). That Hartford engaged in such analysis, moreover, did not confer any additional rights to Plaintiff. Hartford correctly notes that ERISA requires plan administrators to administer plans and pay benefits in accordance with plan documents. *Egelhoff v. Egelhoff,* 532 U.S. 141, 150 (2001).

for 30 minutes at a time. Later that year, in September 2003, a Hartford representative interviewed Plaintiff for over two hours. Despite complaining of leg pain and elevating his leg while sitting, the Plaintiff walked with a normal gait. And while Plaintiff informed the interviewer about his limitations, he admitted to less limitations than those Dr. Urich suggested. Lastly, Plaintiff admitted taking only an occasional aspirin for pain, an indication that he no longer needed or took Ultram, a drug he had been prescribed in 2001 for moderate to moderately severe pain.

### D. Conclusion

Plaintiff bears the burden of proving he is entitled to continuing benefits from Hartford. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998). And that burden exists whether Hartford denied his claim at the start or terminated his benefits after initially finding him disabled and paying him benefits for some time. *Hufford v. Harris Corp.*, 322 F.Supp.2d 1345, 1360 (M.D. Fla. 2004) (claimant "retains the burden of proving continued disability" and administrator has no burden of proving a change in claimant's condition to justify benefits termination). For the reasons stated, it is

RECOMMENDED:

1. Defendant's Motion for Summary Judgment (doc. 38) be GRANTED.

2. Plaintiff's Motion for Summary Judgment (doc. 28) be DENIED.

IT IS REPORTED at Tampa, Florida on March 6, 2006.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).


cc:     The Hon. Steven D. Merryday
        Counsel of Record